UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------x

ALISON ABDO and TAMMY ABDO,                    Index No. 6:26-cv-1039 (FJS/MJK)

          Plaintiffs,

  -against-                                            **COMPLAINT**

SARANAC LAKE CENTRAL SCHOOL DISTRICT,          **JURY TRIAL
DEMANDED**

          Defendant.

--------------------------------------------------------------------------x

By and through their undersigned counsel, Plaintiffs ALISON ABDO and TAMMY ABDO, as and for their Complaint against Defendant SARANAC LAKE CENTRAL SCHOOL DISTRICT, allege as follows:

## NATURE OF THE ACTION

1. This is a claim for disability discrimination and retaliation under the Americans with Disabilities Act, as amended ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and New York State Human Rights Law ("NYSHRL").

## PARTIES

2. Plaintiff Alison Abdo is of legal age and resides in the Town of Unadilla in Otsego County, New York, which is within this judicial district.

3. Plaintiff Tammy Abdo is of legal age and resides in the Hamlet of Lake Clear in Franklin County, New York, which is within this judicial district.

4. Defendant Saranac Lake Central School District (the "School District") is a public school district and an education corporation, organized and existing pursuant to the laws of the State of New York and which has its principal place of business located at 79 Canaras Avenue, Saranac Lake, New York, which is within this judicial district.

1

**JURISDICTION, VENUE & CONDITIONS PRECEDENT**

5. As this action seeks to redress violations of Plaintiffs' federal statutory rights under the ADA and Section 504, this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 794a, and 42 U.S.C. §§ 12117(a) and 2000e-5(f)(3).

6. As Plaintiffs' state law claims are so related to their federal claims that they form part of the same case or controversy as their federal claims, this Honorable Court has supplemental jurisdiction over such state law claims under 28 U.S.C. § 1367(a).

7.  The events giving rise to the claims asserted herein occurred primarily in the County of Franklin, State of New York, which is within this judicial district and, therefore, venue in the Northern District of New York is proper under 28 U.S.C. § 1391(b)(2).

8. On or about August 18, 2025, Plaintiffs submitted Charges of Discrimination to the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging discrimination on the basis of disability and retaliation.

9. On March 2, 2026, the EEOC issued Plaintiff Alison Abdo a Right to Sue Letter.

10. On March 20, 2026, the EEOC forwarded Plaintiff Tammy Abdo's request for issuance of a Right to Sue Letter to the United States Department of Justice; the Right to Sue letter has not yet issued and, when it does, Plaintiffs intend to amend this Complaint to add the allegation.

11. On or about August 18, 2025, Plaintiffs served a notice of claim upon the Defendant School District in compliance with Section 3813 of the New York Education Law and Sections 50-e and 50-i of the New York General Municipal Law ("GML").

12. On or about October 17, 2025, Plaintiff gave testimony under oath at an examination conducted by counsel for the Defendant School District in compliance with GML § 50-h.

13. More than thirty days have elapsed since Plaintiffs served their notice of claim, and the Defendant School District has failed or refused to make adjustment of their claims.

## FACTUAL ALLEGATIONS

### A. Alison Abdo.

14. Plaintiff Alison Abdo ("A. Abdo") was hired by the Defendant School District in 2020 as a Classroom Aide.

15. She performed her job well and received excellent evaluations since her hire and had no serious disciplinary issues throughout her employment.

16. A. Abdo's son has Type I Diabetes and, at all relevant times, attended the Petrova Elementary School, where A. Abdo was also assigned.

17. Throughout her employment, A. Abdo frequently used her accrued and approved PTO time to attend to her son's medical needs, including taking him to doctor appointments and staying home with him when sick.

18. She never exceeded her allotted PTO time and, over the years, nobody ever complained about her usage of this time or suggested that her usage was excessive.

19. Prior to the events at issue in this action, A. Abdo was never disciplined for her use of PTO time.

20. Also throughout her employment, A. Abdo often used her personal electronic device (whether her phone or iPad) during the school day to communicate with the school nurse and her son's Aide regarding her son's medical condition, including fluctuations in his blood sugar and his general health and wellbeing.

21. Historically, nobody ever complained about her use of her electronic devices for this purpose, and she was not previously disciplined for this.

3

22. Indeed, the administration at her school and direct supervisor were aware of and sanctioned this activity.

23. Neither her use of PTO time nor her use of her electronic devices to monitor her son's disability and medical well-being interfered with A. Abdo's ability to successfully perform her job.

24. Indeed, her evaluations over the years gave her overall positive feedback, including for her attendance and attentiveness to and performance of her duties.

25. Despite this, on or about June 5, 2025, Superintendent of Schools Diane Fox met with A. Abdo and advised that she would be recommending her termination to the Board of Education.

26. Fox claimed that the primary reason for this decision was A. Abdo's alleged excessive use of PTO time, even though she admitted she understood that A. Abdo used most of her time to attend to her child's disability and medical needs, had not exceeded her allowable accrued time, and that she had never before been or disciplined for this.

27. Fox also claimed A. Abdo's use of electronic devices in school to communicate to the school nurse and her son's aide contributed to this decision.

28. But, again, this never interfered with A. Abdo's job performance, and she was never previously formally counseled or disciplined for this, reflecting a departure from Defendant's general progressive discipline policy.

29. Upon information and belief, other Classroom Aides at Petrova Elementary School, who were subject to the same workplace rules and under the same supervisory structure as A. Abdo, have used as much, or more, PTO time as A. Abdo has over the relevant time period and have not been terminated or threatened with termination.

30. Upon information and belief, none of these other Aides used their PTO time on a consistent basis to attend to a family member with a disability.

31. Upon information and belief, other employees at Petrova Elementary School, including Classroom Aides and others subject to the same workplace rules and under the same supervisory structure as A. Abdo, have used their personal electronic devices during the school day and work hours and have not been terminated or threatened with termination for this.

32. Upon information and belief, none of these other employees used their personal electronic devices on a consistent basis to attend to a family member with a disability.

33. In the end, Fox gave A. Abdo the option to resign rather than have a termination on her record; however, she made clear that, if A. Abdo did not resign, she would certainly be terminated.

34. A. Abdo's position had no civil service protections, and so she had no ability to challenge her termination beyond protesting to the Superintendent, who was the decision-maker and, as such, she agreed to tender her resignation to avoid the negative outcome of a termination on her record.

35. The foregoing facts demonstrates associational discrimination on the basis of A. Abdo's son's disability as (1) Fox essentially admitted she was terminating A. Abdo's employment because of her need to use her PTO time to attend to her son's disability and medical needs, whereas other Aides have used just as much (or more) PTO time for other, non-disability-related reasons; (2) A. Abdo's use of PTO time was never before made an issue, with her performance evaluations praising her attendance and performance of her duties; (3) A. Abdo's use of a personal electronic device, which had been approved at her building and never before made an issue of serious concern, was related solely to her coordination of her son's medical care in connection with his disability, and she had never before been disciplined for this; and (4) there was no

legitimate, non-discriminatory reason for her termination, and any such asserted reason by Defendant is pretextual.

**B. Tammy Abdo.**

36. Plaintiff Tammy Abdo ("T. Abdo") was hired by Defendant in October 2023 as a Classroom Aide.

37. She performed her job well and received excellent evaluations since her hire and had no disciplinary issues throughout her employment.

38. T. Abdo was originally assigned to the elementary school and, after about two months, was transferred to the middle school.

39. T. Abdo has a severe latex allergy, where exposure to latex items can cause her to go into anaphylactic shock, which can be life-threatening.

40. While working in the middle school, latex balloons were used in certain science classes.

41. T. Abdo reported her allergy to the administration and asked for an accommodation to avoid exposure to these balloons.

42. The administration agreed that, on days where balloons were used in science class, she would be excused from the classroom and permitted to switch places with another Aide, and this arrangement worked well.

43. Starting in or about October or November of 2024, certain teachers began giving latex balloons to students, and the balloons became prevalent in the school, presenting a substantial health risk to T. Abdo.

44. She asked the administration to prevent and/or limit the distribution of latex balloons throughout the school as an accommodation.

45. On or about March 25, 2025, School Superintendent Diane Fox formally denied T. Abdo's accommodation request, claiming T. Abdo did not have a disability as defined by the ADA, although she did agree to "make every reasonable effort" to provide T. Abdo with non-latex gloves and other materials necessary for her job duties.

46. Neither Fox nor any other administrator sought to engage in a further interactive process to ascertain whether any other reasonable accommodation could or would be made.

47. Just over two months later, on June 5, 2025, Fox sent T. Abdo a letter advising that she was recommending her termination to the Board of Education.

48. Fox claimed the reason was that T. Abdo had consistently arrived to school after her scheduled 8:00am start time, often arriving between 10-20 minutes late.

49. T. Abdo's administrators and supervisors were aware of the time she arrived and never before raised it as an issue of serious concern with her.

50. It was not until a few weeks before her termination that T. Abdo's principal said something to her about her arrival time, and this was after her accommodation request was denied and she had complained about this.

51. Also, T. Abdo was never before disciplined for her arrival time, and her performance evaluations were excellent and gave her positive feedback, thus reflecting a departure from Defendant's general progressive discipline policy.

52. Moreover, T. Abdo often observed other employees with the same start time as her arriving to school at the same time as her, and, upon information and belief, none of these other employees have been counseled, disciplined, or terminated because of their arrival times.

53. Upon information and belief, these other employees were subject to the same workplace rules and under the same supervisory structure as T. Abdo.

7

54. Upon information and belief, these other employees did not have a disability and/or did not seek reasonable accommodations.

55. In the end, Fox gave T. Abdo the option to resign rather than have a termination on her record; however, she made clear that, if T. Abdo did not resign, she would certainly be terminated.

56. T. Abdo's position had no civil service protections, and so she had no ability to challenge her termination beyond protesting to the Superintendent, who was the decision-maker, and, as such, she agreed to tender her resignation to avoid the negative outcome of a termination on her record.

## CLAIMS FOR RELIEF

### COUNT I
### ASSOCIATIONAL DISABILITY DISCRIMINATION
ADA, 42 U.S.C.  12101, *et seq.*
(On Behalf of Plaintiff A. Abdo)

57. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

58. The ADA provides, in pertinent part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

59. Under the ADA, unlawful discrimination includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

8

60. As the Defendant School District employed more than 15 employees in the 20 or more calendar weeks in the current or preceding calendar year and was Plaintiff A. Abdo's employer, it is a "covered entity" under the ADA. *See* 42 U.S.C. § 12111(2), (5).

61. At all relevant times, Plaintiff A. Abdo was qualified, with or without a reasonable accommodation, to perform the essential functions of the job of Classroom Aide and, thus, is a "qualified individual" under the ADA. *See* 42 U.S.C. § 12111(8).

62. Plaintiff A. Abdo's son has Type I Diabetes, which substantially impairs the major life activity of eating and the operation of the major bodily functions of the natural production of insulin and the metabolism and regulation of blood sugar; the condition requires daily maintenance through injection of insulin through an insulin pump and continuous monitoring of blood sugar levels, and the failure to properly and adequately regulate this condition can lead to severe illness or death.

63. Accordingly, A. Abdo's son has a "disability" as defined by the ADA. See 42 U.S.C. § 12102

64. By dint of its conduct as alleged herein, and specifically by terminating Plaintiff A. Abdo's employment because of her son's disability, the Defendant School District engaged in associational disability discrimination against Plaintiff A. Abdo in violation of the ADA.

65. As a direct and proximate result, Plaintiff A. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

## COUNT II
### ASSOCIATIONAL DISABILITY DISCRIMINATION
### Rehabilitation Act, 29 U.S.C. § 701, *et seq.*
### (On Behalf of Plaintiff A. Abdo)

66. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

67. The Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

68. The Defendant School District, as a public school district and education corporation and, thus, is a "program or activity" under the Rehabilitation Act. See 29 U.S.C. § 794(b).

69. Upon information and belief, at all relevant times, the Defendant School District received federal financial assistance.

70. At all relevant times, Plaintiff A. Abdo was qualified, with or without a reasonable accommodation, to perform the essential functions of the job of Classroom Aide and, thus, is a qualified individual under the Rehabilitation Act.

71. Plaintiff A. Abdo's son has Type I Diabetes, which substantially impairs the major life activity of eating and the operation of the major bodily functions of the natural production of insulin and the metabolism and regulation of blood sugar; the condition requires daily maintenance through injection of insulin through an insulin pump and continuous monitoring of blood sugar levels, and the failure to properly and adequately regulate this condition can lead to severe illness or death.

72. Accordingly, A. Abdo's son has a "disability" as defined by the Rehabilitation Act.

10

73. By dint of its conduct as alleged herein, and specifically by terminating Plaintiff A. Abdo's employment because of her son's disability, the Defendant School District engaged in associational disability discrimination against Plaintiff A. Abdo in violation of the Rehabilitation Act.

74. As a direct and proximate result, Plaintiff A. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

**COUNT III**
**ASSOCIATIONAL DISABILITY DISCRIMINATION**
**NYSHRL, N.Y. Exec. L. § 290, *et seq.***
**(On Behalf of Plaintiff A. Abdo)**

75. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

76. The NYSHRL provides, in pertinent part: "It shall be an unlawful discriminatory practice for an employer . . . , because of an individual's . . . disability . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. L. § 296(1)(a).

77. Unlawful discrimination under the NYSHRL includes "discrimination against an individual because of that individuals' known relationship or association with a member or members of a protected category covered under the relevant provisions of the Human Rights Law." 9 N.Y.C.R.R. § 466.14(c)(1).

78. At all relevant times, the Defendant School District was Plaintiff A. Abdo's employer.

79. At all relevant times, Plaintiff A. Abdo was qualified, with or without a reasonable accommodation, to perform the essential functions of the job of Classroom Aide.

80. Plaintiff A. Abdo's son has Type I Diabetes, which substantially impairs the major life activity of eating and the operation of the major bodily functions of the natural production of insulin and the metabolism and regulation of blood sugar; the condition requires daily maintenance through injection of insulin through an insulin pump and continuous monitoring of blood sugar levels, and the failure to properly and adequately regulate this condition can lead to severe illness or death.

81. Accordingly, A. Abdo's son has a "disability" as defined by the NYSHRL. See N.Y. Exec. L. § 290(21).

82. By dint of its conduct as alleged herein, and specifically by terminating Plaintiff A. Abdo's employment because of her son's disability, the Defendant School District engaged in associational disability discrimination against Plaintiff A. Abdo in violation of the NYSHRL.

83. As a direct and proximate result, Plaintiff A. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

## COUNT IV
### DISABILITY DISCRIMINATION
### ADA, 42 U.S.C.  12101, *et seq.*
### (On Behalf of Plaintiff T. Abdo)

84. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

85. The ADA provides, in pertinent part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

12

86. Under the ADA, unlawful discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.." 42 U.S.C. § 12112(b)(5)(A).

87. As the Defendant School District employed more than 15 employees in the 20 or more calendar weeks in the current or preceding calendar year and was Plaintiff T. Abdo's employer, it is a "covered entity" under the ADA. *See* 42 U.S.C. § 12111(2), (5).

88. At all relevant times, Plaintiff T. Abdo was qualified, with or without a reasonable accommodation, to perform the essential functions of the job of Classroom Aide and, thus, is a "qualified individual" under the ADA. *See* 42 U.S.C. § 12111(8).

89. Plaintiff T. Abdo has a severe latex allergy, which substantially impairs the major life activity of breathing and the operation of the major bodily functions of the body's immune response, and which, upon exposure to latex, can cause her throat to close, trigger a severe asthma attack and, in some cases, require use of an EpiPen.

90. Accordingly, T. Abdo has a "disability" as defined by the ADA. *See* 42 U.S.C. § 12102

91. By dint of its conduct as alleged herein, and specifically by failing to reasonably accommodate T. Abdo's latex allergy and terminating her employment because of her disability, the Defendant School District engaged in disability discrimination against Plaintiff T. Abdo in violation of the ADA.

92. As a direct and proximate result, Plaintiff T. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

## COUNT V
## DISABILITY DISCRIMINATION
### Rehabilitation Act, 29 U.S.C. § 701, *et seq.*
### (On Behalf of Plaintiff T. Abdo)

93. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

94. The Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

95. Under the Rehabilitation Act, unlawful discrimination includes failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.

96. The Defendant School District, as a public school district and education corporation and, thus, is a "program or activity" under the Rehabilitation Act. See 29 U.S.C. § 794(b).

97. Upon information and belief, at all relevant times, the Defendant School District received federal financial assistance.

98. At all relevant times, Plaintiff T. Abdo was qualified, with or without a reasonable accommodation, to perform the essential functions of the job of Classroom Aide as, thus, is a qualified individual under the Rehabilitation Act.

99. Plaintiff T. Abdo has a severe latex allergy, which substantially impairs the major life activity of breathing and the operation of the major bodily functions of the body's immune response, and which, upon exposure to latex, can cause her throat to close, trigger a severe asthma attack and, in some cases, require use of an EpiPen.

100. Accordingly, T. Abdo has a "disability" as defined by the Rehabilitation Act.

14

101. By dint of its conduct as alleged herein, and specifically by failing to reasonably accommodate T. Abdo's latex allergy and terminating her employment because of her disability, the Defendant School District engaged in disability discrimination against Plaintiff T. Abdo in violation of the Rehabilitation Act.

102. As a direct and proximate result, Plaintiff T. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

**COUNT VI**
**DISABILITY DISCRIMINATION**
**NYSHRL, N.Y. Exec. L. § 290, *et seq.***
**(On Behalf of Plaintiff T. Abdo)**

103. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

104. The NYSHRL provides, in pertinent part: "It shall be an unlawful discriminatory practice for an employer . . . , because of an individual's . . . disability . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. L. § 296(1)(a).

105. The NYSHRL also provides: "It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities . . . of an employee . . . in connection with a job or occupation sought or held . . . ." N.Y. Exec. L. § 296(3)(a).

106. At all relevant times, the Defendant School District was Plaintiff T. Abdo's employer.

107. At all relevant times, Plaintiff T. Abdo was qualified, with or without a reasonable accommodation, to perform the essential functions of the job of Classroom Aide.

15

108. Plaintiff T. Abdo has a severe latex allergy, which substantially impairs the major life activity of breathing and the operation of the major bodily functions of the body's immune response, and which, upon exposure to latex, can cause her throat to close, trigger a severe asthma attack and, in some cases, require use of an EpiPen.

109. Accordingly, T. Abdo has a "disability" as defined by the NYSHRL. See N.Y. Exec. L. § 290(21).

110. By dint of its conduct as alleged herein, and specifically by failing to reasonably accommodate T. Abdo's latex allergy and terminating her because of her disability, the Defendant School District engaged in disability discrimination against Plaintiff T. Abdo in violation of the NYSHRL.

111. As a direct and proximate result, Plaintiff T. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

## COUNT VII
### RETALIATION
### ADA, 42 U.S.C.  12101, *et seq.*
### (On Behalf of Plaintiff T. Abdo)

112. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

113. The ADA provides, in pertinent part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a).

114. By dint of its conduct as alleged herein, and specifically by terminating her employment because she sought reasonable accommodations and/or complained about not being

adequately accommodated, the Defendant School District unlawfully retaliated against Plaintiff T. Abdo in violation of the ADA.

115. As a direct and proximate result, Plaintiff T. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

<u>**COUNT VIII**</u>
**RETALIATION**
**Rehabilitation Act, 29 U.S.C. § 701, *et seq.***
**(On Behalf of Plaintiff T. Abdo)**

116. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

117. The Rehabilitation Act provides prohibits retaliation against any person who has opposed any act or practice made unlawful by the Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act. *See* 29 U.S.C. § 794(a), (d); 42 U.S.C. § 12203(a).

118. By dint of its conduct as alleged herein, and specifically by terminating her employment because she sought reasonable accommodations and/or complained about not being adequately accommodated, the Defendant School District unlawfully retaliated against Plaintiff T. Abdo in violation of the ADA.

119. As a direct and proximate result, Plaintiff T. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

## COUNT IX
### RETALIATION
### NYSHRL, N.Y. Exec. L. § 290, *et seq.*
### (On Behalf of Plaintiff T. Abdo)

120. Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

121. The NYSHRL provides, in pertinent part: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because such person has (i) opposed any practices forbidden under this article . . . , or (iii) requested a reasonable accommodation under this article. N.Y. Exec. L. § 296(7).

122. By dint of its conduct as alleged herein, and specifically by terminating her employment because she sought reasonable accommodations and/or complained about not being adequately accommodated, the Defendant School District unlawfully retaliated against Plaintiff T. Abdo in violation of the ADA.

123. As a direct and proximate result, Plaintiff T. Abdo has been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, lost wages, lost benefits, emotional distress and mental anguish, incidental damages, and consequential damages.

### JURY DEMAND

124. Plaintiffs hereby demand a jury trial in this action.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully requests that this Court:

A. Accept jurisdiction over this action and all parties;

B. Empanel a jury to hear all claims;

18

C. Adjudge and declare that Defendant violated Plaintiffs' rights under the ADA, Rehabilitation Act, and NYSHRL;

D. Award to Plaintiff compensatory damages, including without limitation backpay, incidental damages, and consequential damages, with pre- and post-judgment interest;

E. Order Defendant to reinstate Plaintiffs' employment, with full restoration of seniority and benefits retroactive to the date of their terminations, or, in lieu thereof, awrd to Plaintiffs front pay;

F. Award to Plaintiff the reasonably incurred attorneys' fees and litigation costs associated with the prosecution of this matter; and

G. Award to Plaintiff such additional relief as the Court deems just, proper and equitable under the circumstances.

Dated: Newburgh, New York
         May 12, 2026                                    Yours, etc.,
                                                         GOLDMAN LAW, PLLC
                                                         *Attorneys for Plaintiffs*

                                                         By: ___/s/ Jonathan R. Goldman_____
                                                                 Jonathan R. Goldman, Esq. (520155)
                                                                 372 South Plank Road, Ste. 2
                                                                 Newburgh, New York 12550
                                                                 (845) 534-6472 Ext. 1001 [Tel]
                                                                 (845) 579-3064 [Fax]
                                                                 jgoldman@jrgoldmanlaw.com

19